FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

JAN 03 2023

TAMMY H. DOWNS, CLERK
By: /s/ Tammy  
    DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | No. 2:23CR 00001 DPM |
| | ) | |
| v. | ) | |
| | ) | 18 U.S.C. § 1343 |
| THOMAS DAVID CARRUTH | ) | 18 U.S.C. § 1346 |
| | ) | 18 U.S.C. § 1952(a)(3) |
| | ) | 18 U.S.C. § 666(a)(1)(B) |
| | ) | 18 U.S.C. § 1001(a)(2) |
| | ) | 18 U.S.C. § 1512(c)(2) |
| | ) | 18 U.S.C. § 2 |

## INDICTMENT

THE GRAND JURY CHARGES THAT:

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. THOMAS DAVID CARRUTH, was an elected district judge for the Monroe County District Court in Clarendon, Arkansas. CARRUTH was first elected in 2012 and took office in January 2013. CARRUTH presided over cases involving traffic violations, misdemeanor offenses, preliminary felony matters, and civil matters where the amount in controversy did not exceed $5,000.00. CARRUTH served as a judge part time and was also a practicing attorney in the State of Arkansas.

2. As a district judge, CARRUTH was an agent of Monroe County, Arkansas, and had a fiduciary duty to act in the best interests of and to provide honest services to Monroe County, Arkansas, and its citizens.

3. Individual 1, whose identity is known to the grand jury, was a citizen of Monroe County. CARRUTH represented Individual 1 in a legal proceeding in and around October 2020. CARRUTH also represented Individual 1's ex-husband in a legal proceeding that was finalized in

and around January 2022.

4. Individual 1 was in a relationship with Individual 2, whose identity is known to the grand jury and who had a criminal charge for violation of a no-contact order pending before CARRUTH in and around March and April 2022. Individual 2 was on parole at the time he committed the alleged crime, so he was also reported for violating a condition of his parole based on the criminal charge. The parole violation was going to be scheduled for an administrative sanction hearing before a Sanction Hearing Examiner.

5. Under Ark. Code Ann. § 16-85-714, violation of a no contact order is a Class A misdemeanor. Under Ark. Code Ann. § 5-4-401, a defendant convicted of a Class A misdemeanor may be sentenced to a period of incarceration not to exceed 1 year.

6. On or about April 14, 2022, CARRUTH met with Individual 1 in CARRUTH's office about outstanding paperwork related to the legal proceeding in which CARRUTH represented Individual 1's ex-husband. At that meeting, Individual 1 asked CARRUTH if he could help with Individual 2's pending criminal case. CARRUTH responded by asking Individual 1 what she had of equal or greater value to the risk he would be taking by helping her. Individual 1 offered to admit to potential crimes she had committed, and CARRUTH directed her to write down those crimes and bring the writing to him. During this conversation, CARRUTH also mentioned that he had previously received an admonishment from the Judicial Discipline and Disability Commission for being inappropriate and explained that the people who had accused him could not prove anything. CARRUTH was referring to a November 2018 admonishment from the Judicial Discipline and Disability Commission after an inquiry into allegations that he had solicited sexual favors from women appearing before him as a judge.

7. Also on or about April 14, 2022, at the same meeting, CARRUTH instructed Individual 1 to reference paperwork related to the legal proceeding involving Individual 1's ex-

husband when communicating with him to conceal that they were discussing Individual 2's ongoing case. There was no such outstanding paperwork after on or about April 14, 2022.

8.     On or about April 18, 2022, Individual 1 returned to CARRUTH's office and recorded the conversation she had with CARRUTH there. Individual 1 provided CARRUTH with a handwritten list of potential crimes she had committed. CARRUTH told her he would turn it into an affidavit which Individual 1 should notarize and bring back to him. Then CARRUTH said he would put the notarized affidavit in a safe at his home.

9.     Also on or about April 18, 2022, at the same meeting, Individual 1 and CARRUTH discussed Individual 2's case, and CARRUTH suggested that he could set Individual 2's "trial special as quickly as possible," which would enable the charge to be dismissed before Individual 2 had a parole-violation hearing and make it less likely that he would be found in violation of his parole based on the charge. CARRUTH also told Individual 1, "I haven't made up my mind to do anything yet. I got one area I want to explore with you . . . . And I don't know how you're gonna react. Um . . . how do you feel about sex? I mean . . . Now listen, stop. Look at me honestly and tell me." Individual 1 responded, "I'd prefer not [to] have to in order to get this done," and refused the request. CARRUTH asked, "The next step back from that is . . . do you have any nice lingerie?" When Individual 1 responded that she did, CARRUTH asked, "Do you mind letting me see you in it?" Individual 1 again refused CARRUTH's request. CARRUTH then explained how Individual 2's case would proceed and told Individual 1 "[t]hat's what you're buying is we're going to try to shorten those timeframes" in reference to the trial. CARRUTH told Individual 1 he could not promise to set the trial that week but would check with his court clerk to see if there was an earlier date that all parties could appear. CARRUTH then said Individual 1 should let him know if she changed her mind about having sex with him or "giving [him] a lingerie show." CARRUTH also stated he would try to set the trial for the next Monday or Tuesday.

10. On or about April 25, 2022, Individual 1 told CARRUTH that she had a 28-minute recording of their meeting on or about April 18, 2022, on her phone.

11. On or about April 26, 2022, Individual 1 reported CARRUTH to law enforcement for soliciting sex from her in exchange for helping with Individual 2's case.

12. On or about April 28, 2022, CARRUTH contacted the Arkansas State Police to report that Individual 1 told CARRUTH about potential crimes she had committed and that Individual 1 was conjuring up a story "about [him] of a sexual nature" to report to either the Arkansas State Police or the Judicial Discipline and Disability Commission. CARRUTH also falsely told an Arkansas State Police agent that when Individual 1 asked him to help with Individual 2's case, CARRUTH told her to stop talking about the case and there was nothing she could do to help. The agent and CARRUTH scheduled an in-person meeting for May 2, 2022.

13. On or about April 29, 2022, Individual 2's arraignment date was moved from June 16, 2022, to May 5, 2022.

14. On or about May 2, 2022, CARRUTH's clerk sent an email to a clerk in a different court division to transfer Individual 2's case to a different judge. The email noted that CARRUTH recused from Individual 2's case.

15. On or about May 2, 2022, CARRUTH met with a Federal Bureau of Investigation (FBI) special agent and the Arkansas State Police agent he had spoken to on or about April 28, 2022, who was also a task force officer with the FBI. CARRUTH provided them with the handwritten list of potential crimes Individual 1 had given him on or about April 18, 2022. CARRUTH also showed the investigators Apple iMessages he had exchanged with Individual 1 which were on his cell phone. CARRUTH made recorded statements to the FBI agent and task force officer in which he falsely denied that he had asked Individual 1 to have sex with him.

16. On or about May 4, 2022, CARRUTH sent an email to the FBI special agent who

4

had interviewed him. CARRUTH attached a 3-page letter to his email, the purpose of which he claimed was to provide context to two iMessages he had sent to Individual 1, which read "Yes, I will do the right thing. And everyone will lose." In the letter, CARRUTH claimed that despite Individual 1 wanting him to dismiss Individual 2's case, he was not going to do so unless the evidence at trial dictated that outcome.

## COUNTS 1-3

17. Paragraphs 1 through 16 are incorporated and realleged as if fully set forth herein.

18. From on or about April 14, 2022, through on or about May 4, 2022, in the Eastern District of Arkansas, the defendant,

**THOMAS DAVID CARRUTH,**

devised and intended to devise a scheme and artifice to defraud and deprive Monroe County, Arkansas and the citizens of Monroe County, Arkansas of their right to the honest services of a public official, namely the honest services of **CARRUTH,** an elected state official, through bribery.

19. On or about April 18, 2022, in the Eastern District of Arkansas and elsewhere, **CARRUTH**, for the purpose of executing the above-described scheme and artifice to defraud and deprive, transmitted and caused to be transmitted by means of wire communications in and affecting interstate commerce the following writings, signs, signals, pictures, and sounds:

| Count | Description |
|---|---|
| 1 | Apple iMessages from **CARRUTH** to Individual 1 reading "You talking about paperwork on him? Yes. I've read it." |
| 2 | Apple iMessage from **CARRUTH** to Individual 1 reading "More, much more risk. Unless you want to do it today." |
| 3 | Apple iMessage from **CARRUTH** to Individual 1 reading "I'm in Marvell right now. But bring it to my office when I get back to town." |

5

All in violation of Title 18, United States Code, Sections 1343, 1346, and 2.

## COUNTS 4-6

20. Paragraphs 1 through 16 are incorporated and realleged as if fully set forth herein.

21. On or about April 18, 2022, in the Eastern District of Arkansas and elsewhere, the defendant,

**THOMAS DAVID CARRUTH,**

knowingly and intentionally used and caused to be used a facility in interstate and foreign commerce, namely a telephone and a wire and electronic communication as set forth below, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, that is bribery, contrary to 18 U.S.C. §§ 1343 and 1346 and Ark. Code Ann. § 5-52-101(a)(3), and thereafter performed and attempted to perform an act to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment and carrying on of the above unlawful activity.

| Count | Description |
|---|---|
| 4 | Apple iMessages from **CARRUTH** to Individual 1 reading "You talking about paperwork on him? Yes. I've read it." |
| 5 | Apple iMessage from **CARRUTH** to Individual 1 reading "More, much more risk. Unless you want to do it today." |
| 6 | Apple iMessage from **CARRUTH** to Individual 1 reading "I'm in Marvell right now. But bring it to my office when I get back to town." |

All in violation of Title 18, United States Code, Sections 1952(a)(3) and 2.

## COUNT 7

22. Paragraphs 1 through 16 are incorporated and realleged as if fully set forth herein.

23. In the one-year period from on or about December 1, 2021, through on or about November 30, 2022, Monroe County, Arkansas, received benefits in excess of $10,000 from the United States government under federal programs involving grants, contracts, subsidies, loans, guarantees, insurance, and other forms of Federal assistance.

24. On or about April 18, 2022, in the Eastern District of Arkansas and elsewhere, the defendant,

**THOMAS DAVID CARRUTH,**

corruptly solicited and demanded for his own benefit and accepted and agreed to accept things of value from Individual 1, intending to be influenced and rewarded in connection with a business, transaction, and series of transactions of Monroe County, Arkansas valued at $5,000 and more, that is, the criminal matter of Individual 2.

All in violation of Title 18, United States Code, Sections 666(a)(1)(B) and 2.

## COUNT 8

25. Paragraphs 1 through 16 are incorporated and realleged as if fully set forth herein.

26. On or about May 2, 2022, in the Eastern District of Arkansas and elsewhere, the defendant,

**THOMAS DAVID CARRUTH,**

knowingly and willfully made and caused to be made materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of a department or agency of the United States, namely the Federal Bureau of Investigation, by falsely stating during an interview with the Federal Bureau of Investigation in Little Rock, Arkansas, the following:

    a. "I didn't ask [Individual 1] for sex either."

      b.    "[Individual 1] made the overture about sex."

      c.    "No, I've . . . never even thought about [having sex with Individual 1] . . . was not willing to have sex with her."

      d.    "I did not offer sex to that girl . . . or ask for it."

      e.    "Correct" when asked "you didn't insinuate sex, right?"

      f.    "No" when asked "did you actually make any requests for sex?"

All in violation of Title 18, United States Code, Sections 1001(a)(2) and 2.

## COUNT 9

27. Paragraphs 1 through 16 are incorporated and realleged as if fully set forth herein.

28. Between on or about April 28, 2022, and on or about May 4, 2022, in the Eastern District of Arkansas and elsewhere, the defendant,

**THOMAS DAVID CARRUTH,**

corruptly obstructed, influenced, and impeded an official proceeding, that is, a proceeding before a Federal grand jury in the Eastern District of Arkansas, and attempted to do so by making materially false statements to agents of the Federal Bureau of Investigation during an interview and by sending a letter to a special agent of the Federal Bureau of Investigation.

All in violation of Title 18, United States Code, Sections 1512(c)(2) and 2.

## FORFEITURE ALLEGATION

29. Upon conviction of Count One, Two, Three, Four, Five Six, Seven, or Nine of this Indictment, the defendant shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), all property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.